STATE of Missouri ex rel. SHRINERS' HOS-
PITALS FOR CRIPPLED CHILDREN, a
Corporation, Relator-Appellant,

v.

David R. HENSLEY, Judge, and Wallace J.
Sheets, Clerk of the Probate Court of
St. Louis County, Respondents,

Carl Findeison, Julius J. Findeison, William
F. Findeison, Frederick H. Findeison and
Harry F. Findeison, Intervenors-Respond-
ents.

No. 31450.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1964.

As Amended Sept. 21, 1964.

Motion for Rehearing or to Transfer to
Supreme Court Denied Dec. 29, 1964.

Application for Transfer Denied Feb. 8, 1965.

Smith, Ristig & Smith, Washington, D. C., Foster, Vogel & Stroh, John H. Stroh, St. Louis, for appellant.

Ziercher, Tzinberg, Human & Michenfelder, Albert A. Michenfelder, Jr., Clayton, for respondents Hensley et al.

Tremayne, Joaquin, Lay, Batts & Carr, Kenneth S. Lay, Clayton, for respondents Findeison et al.

RUDDY, Presiding Judge.

The relator (Shriners' Hospitals for Crippled Children, a corporation) in this certiorari proceeding, commenced in the Circuit Court of St. Louis County, seeks to have an order of the Probate Court of St. Louis County quashed. In said order the Probate Court of St. Louis County rejected from probate a paper writing and codicil purporting to be the Last Will and Testament of Carrie Skuy, deceased, which were produced and exhibited to said court. It is the contention of relator that said Probate Court was acting in excess of its jurisdiction in receiving proof pertaining to said will and in making the order rejecting said paper writings from probate. The Circuit Court denied the relief prayed for in relator's petition for writ of certiorari and said relator appeals.

The facts in this proceeding have been stipulated by the parties and are not in dispute. Carrie Skuy, who will be referred to as the decedent hereafter, died on June 14, 1960. Prior to her death she executed three paper writings, the first instrument of which was a purported Last Will and Testament dated May 26, 1958, and attached thereto was a purported codicil dated June 19, 1958. The second instrument was a purported Last Will and Testament dated January 16, 1959. All of these instruments were physically delivered to and deposited with the Probate Court of St. Louis County on June 29, 1960. The minutes of June 29, 1960, of said Probate Court show that the instrument dated May 26, 1958, with the purported codicil thereto dated June 19, 1958 attached were marked "filed only," whereas, the instrument dated January 16, 1959, was marked "filed."

On June 29, 1960, proof of the instrument dated January 16, 1959, was submitted to the Probate Court of St. Louis County by affidavits of two witnesses to said instrument. On July 7, 1960, an application for the probate of the instrument dated January 16, 1959, purporting to be the Last Will and Testament of the decedent was filed and said instrument was "produced in and exhibited to the Probate Court of the County of St. Louis, State of Missouri"; and on the same day the said instrument was ordered admitted to probate. The minute entry concerning the admission to probate of the instrument dated January 16, 1959, appears in the records of the Probate Court of St. Louis County as follows: "Purported Last Will heretofore filed admitted probate Mercantile Trust Co. granted letters testa-

mentary—no bond." On July 7, 1960, letters testamentary were granted to Mercantile Trust Company as executor, having been named in said instrument as such. The instrument dated January 16, 1959, admitted to probate contained a clause revoking all prior wills and codicils.

The date of the first publication of notice of the granting of letters testamentary was July 9, 1960. No application for the probate of the purported Last Will and Testament and Codicil dated May 26, 1958, and June 19, 1958, respectively, was ever made in the Probate Court of St. Louis County. No entries relating to said instruments dated May 26, 1958, and June 19, 1958, were made in the records of the Probate Court of St. Louis County after June 29, 1960, until February 26, 1962.

Relator herein was named as a legatee of a one-eighth portion of the residue of the estate under the instrument admitted to probate.

On or about April 7, 1961, certain purported heirs of the decedent filed in the Circuit Court of the County of St. Louis a suit contesting the will of January 16, 1959, and seeking a judgment that decedent died intestate. These contestants were Carl Findeison, Julius J. Findeison, William F. Findeison, Frederick H. Findeison and Harry F. Findeison. Subsequent to the filing of this certiorari proceeding the aforenamed contestants were permitted to intervene in this proceeding on the ground that the representation of their interests by existing parties is or may be inadequate and they are or may be bound by a judgment in this proceeding.

On February 26, 1962, intervenors filed a paper in the Probate Court of the County of St. Louis which they denominated "Application for Rejection of Will," in which they allege "That there has been presented to and filed in this Court a document dated May 26, 1958, purported to be a Last Will and Testament of Carrie Skuy, deceased; that there has been presented to and filed in this Court a document dated June 19, 1958 purporting to be a codicil to said purported Last Will and Testament of Carrie Skuy, deceased.

"3. That there has been admitted to probate by this Court a document dated January 16, 1959, purporting to be a last will and testament of Carrie Skuy, deceased, which document contains the clause revoking all prior wills and codicils of decedent." The said application concludes with a prayer asking the Probate Court to "enter its order rejecting the purported will of May 26, 1958 and rejecting the purported codicil of June 19, 1958 of Carrie Skuy, deceased."

Thereafter, proof of the execution of the instrument dated May 26, 1958, and the codicil attached dated January 19, 1958, was taken by the Clerk of said Probate Court. On the 23rd day of March, 1962, the Judge of the Probate Court of St. Louis County granted certificates of rejection of the said instruments dated May 26, 1958, and June 19, 1958, respectively, after showing that said instruments were "produced in and exhibited to the Probate Court of the County of St. Louis, State of Missouri," and were "rejected by reason of the admission to probate of a later will dated January 16, 1959. Therefore, the same is ordered rejected and ordered certified and recorded."

On April 30, 1962, relator herein and another residuary legatee under the last will and testament dated January 16, 1959, admitted to probate, filed a motion in said Probate Court to set aside its order rejecting from probate the purported will dated May 26, 1958, and the purported codicil thereto dated June 19, 1958. The two movants alleged that they were legatees under the two instruments rejected by the court. They further alleged in said motion that the two instruments rejected "were merely filed" in the Probate Court on June 29, 1960, pursuant to § 473.043 V.A.M.S.1959, and that under the provisions of § 473.050 RSMo 1959, V.A.M.S., the Probate Court was "without jurisdiction to receive evidence of proof" of said purported will and said purported codicil thereto because said instru-

ments had not been presented to the Judge or Clerk of the Probate Court within nine months from the date of the first publication of notice of granting letters testamentary, namely, July 9, 1960. Said movants contended that they will be substantially prejudiced because said purported last will and testament and said purported codicil thereto may be interjected in the pending will contest on file in the Circuit Court of the County of St. Louis to set aside the last will and testament of Carrie Skuy, dated January 16, 1959. On May 18, 1962, the Probate Court denied the motion.

Thereafter, certain parties claiming to be interested in the probate of the paper writings dated May 26, 1958, and June 19, 1958, interjected by way of their answer and counterclaim in the will contest the instruments dated May 26, 1958, and June 19, 1958, asserting their validity in the event the Circuit Court determined that the instrument dated January 16, 1959, was not the last will and testament of decedent. As the pleadings now stand in the Circuit Court in said will contest the issues presented are whether the two purported wills and the purported codicil are valid or whether the decedent died intestate.

After the Probate Court denied relator's motion to set aside the rejections of the instruments described, relator filed its petition for a writ of certiorari in the Circuit Court of St. Louis County. The petition alleged the facts that we have described aforesaid and further alleged that the action of the respondent judge and respondent clerk was in excess of the jurisdiction granted them and the Probate Court under the law and in legal effect asked the court to quash the record of the Probate Court rejecting the questioned instrument from probate. A writ of certiorari was issued by said Circuit Court, respondents filed their joint answer to the relator's petition and intervenors filed their joint answer. The Circuit Court of the County of St. Louis denied the relief requested.

Relator contends that the order rejecting the described instruments from probate cannot be reached either by the route of appeal or of will contest and holds that the only remedy available is an extraordinary remedial writ, in this case the writ of certiorari. All statutory references hereafter will be to Revised Statutes of Missouri 1959, V.A.M.S., with amendments, if any, unless otherwise indicated.

Section 472.160 enumerates the orders, judgments or decrees of the Probate Court from which an appeal may be taken. The first fourteen sub-sections thereof do not permit an appeal from the order questioned in this case. The 1957 amendment to sub-section (15) of § 472.160 RSMo 1949 (now § 472.160) provided that an appeal is allowed "[i]n all other cases where there is a final order or judgment of the probate court under this Code *except orders admitting to or rejecting wills from probate*." (Emphasis ours.) Consequently no appeal lies from the order complained of. The case law previous to the amendment to subsection (15) of § 472.160 RSMo 1949, held that no appeal lies from the order complained of in the instant case. Lucitt v. Toohey's Estate, 338 Mo. 343, 89 S.W.2d 662, nor does the questioned jurisdiction of the Probate Court in the making of the order rejecting the will and codicil come within the provisions of § 473.083 which provides that, "If any person interested in the probate of a will appears within nine months after the date of the probate or rejection thereof, or within nine months after the first publication of notice of the granting of letters on the estate of the testator, whichever is later, and, by petition to the circuit court of the county, contests the validity of the will, or prays to have a will proved which has been rejected, an issue shall be made up whether the writing produced is the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court."

The issue sought to be presented by the relator herein is not whether the

writings produced in the Probate Court are the will of the testator or not, but relator's sole issue questions the jurisdiction of the Probate Court to act on the instruments because of the time lapse between the date of the publication of the first notice of granting letters testamentary and the time of the presentation of the instruments to the court. The sole purpose of the will contest statute, § 473.083, is to ascertain the single fact whether a certain paper or papers are or are not the last will and testament of the deceased. The statute authorizing a will contest permits no other issue to be tried in said contest. State ex rel. Siegel v. Strother, 365 Mo. 861, 289 S.W.2d 73; Callahan v. Huhlman, 339 Mo. 634, 98 S.W.2d 704; State ex rel. Hamilton v. Guinotte, 156 Mo. 513, 57 S.W. 281, 50 A.L.R. 787; Cox v. Cox, 101 Mo. 168, 13 S.W. 1055; Canty v. Lehmkuhl, Mo.App., 164 S.W.2d 132. An issue of the Probate Court's jurisdiction to make the questioned order of rejection of the instruments in question could not properly be tendered in a will contest, Cox v. Cox, supra; Canty v. Lehmkuhl, supra.

■ Where there is no remedy by appeal the extraordinary remedial writ of certiorari is applicable where the court to which it is directed either has no jurisdiction or acts in excess or abuse of its jurisdiction. State ex rel. Hamilton v. Guinotte, supra; State ex rel. Kassen v. Carver, Mo.App., 355 S.W.2d 324. Certiorari serves the purpose of undoing a thing done, without jurisdiction, after it has been done, State ex rel. Smith v. Williams, 310 Mo. 267, 275 S.W. 534. That is the situation in the instant case. The purpose of this proceeding is to quash the order made by the Probate Court, allegedly without jurisdiction, and which is not an order from which an appeal may be taken. If the Probate Court acted beyond its jurisdiction, then the order made may be quashed in this proceeding, State ex rel. Hamilton v. Guinotte, supra.

It is the position of relator that the documents dated May 26, 1958, and June 19, 1958, purporting to be the Last Will and Testament of Carrie Skuy, deceased, were not "presented" to the Probate Court of St. Louis County within the meaning of § 473.-050 until March 23, 1962, twenty and one-half months after the first publication of notice of granting letters testamentary in the estate of said decedent and, therefore, the Probate Court did not have jurisdiction to either probate or reject said documents when they were finally presented.

Section 473.050 provides as follows: "No proof shall be taken of any will nor any certificate of probate thereof issued, unless the will has been presented to the judge or clerk of the probate court, within nine months from the date of the first publication of the notice of granting letters testamentary or of administration by any probate court in the state of Missouri, on the estate of the testator named in the will so presented."

■ Our summary of the record shows that the two instruments dated May 26 and June 19, 1958, were deposited with the Clerk of the Probate Court on June 29, 1960, together with the instrument that ultimately was probated. The record shows that the 1958 instruments were marked "filed only" and no proof was taken as to them, whereas, the instrument dated January 16, 1959, was marked as being filed and immediately upon being filed was produced in and exhibited to the Probate Court and proof was offered, after which letters testamentary were granted on July 7, 1960, and the date of the first publication of notice of their grant was July 9, 1960. There is nothing in the record to show that the 1958 instruments were ever "produced in and exhibited to the probate court" or that proof was taken until February 26, 1962, when the intervenors filed a paper in the Probate Court which they denominated "Application for Rejection of Will." Thereafter, for the first time proof was taken of the 1958 instruments which were then "produced in and exhibited" to the Probate Court as recited in the certificate of rejection of said court.

It will be remembered that the date of the first publication of notice of the grant of letters testamentary was July 9, 1960, and the time lapse between the publication date and when the application for rejection was filed was a period of time far in excess of nine months. As stated, it is the contention of relator that the 1958 instruments were not "presented" to the probate court, judge or clerk thereof within the meaning of § 473.-050 until the filing of the Application for Rejection and the necessary proof by the subscribing witnesses was given as provided in § 473.063. Until the Application for Rejection was filed there had been no application for letters testamentary under the 1958 instruments as provided in § 473.-073. In this connection we point out that there is no statutory authority permitting anyone to file an "Application for Rejection" of a will. The only application authorized is one for letters under a will, § 473.073, and after the will has been exhibited before the judge or clerk of the probate court and the proof thereof taken the court determines whether or not the will should be admitted to probate or rejected pursuant to § 473.047. We do not think it is the function of anyone interested in a will to ask the court to reject the will. That is a function for the court to perform, if it so determines, after the will has been exhibited and the proof has been submitted. However, this irregularity is not fatal because the 1958 instruments were "produced in and exhibited" to the Probate Court and proof of the due execution of same was taken by the Probate Court after which the said Probate Court granted its certificate of rejection.

As pointed out by relator there is no statutory definition of the word "present" as it is used in § 473.050. Also relator and respondents have been unable to find, nor have we been able to find, a case in this state defining this term as used in the statute. We do find some help in the case of State ex rel. Mitchell v. Gideon, 215 Mo.App. 46, 237 S.W. 220. The court had to determine which of two probate courts had jurisdiction of the estate of the decedent. In making a determination when jurisdiction attached in the probate court, the court, when discussing other cases and authorities said: "The Supreme Court of Minnesota, in the case of Hanson v. Nygaard, 105 Minn. 30, 117 N.W. 235, 127 Am.St.Rep. 523, holds that the jurisdiction of the probate court over the estate of a deceased person attaches when its general jurisdiction is invoked by the presentation to the court of a proper petition by some person entitled to take such action. See Culver v. Hardenbergh, 37 Minn. 225, 33 N.W. 792, loc. cit. 797, where the same doctrine is announced by the Supreme Court of Minnesota.

"In 11 R.C.L. 73, the rule is announced that the jurisdiction of the probate court over the estate of a deceased person attaches when its general jurisdiction is invoked by the presentation to the court of a proper petition by some person entitled to take such action."

In the case of Abrams v. Ross' Estate, Tex.Com.App., 250 S.W. 1019, l. c. 1021, the court there said: "We think a will is 'presented for probate' when it is filed in the proper court, *together with a sufficient application for its probate as required by law*. It is presented for probate by the application. It remains presented for probate so long as the proceeding so instituted is entitled to recognition as a pending proceeding, and no longer." (Emphasis ours.) A similar statement taken from this case appears in 95 C.J.S. Wills § 316, p. 134.

These cases show that something more than the mere filing of a will has to take place before the will has been presented to the judge or clerk of the probate court. As these cases point out the general jurisdiction of the probate court attaches when the will is presented to the court by a proper petition by some person entitled to take such action and that there must be more than a mere filing; that the filing must be accompanied with an application for the probate of the will as required by law. Then and only then is it presented for probate by the application for probate.

In 72 C.J.S., p. 491, the definition of the word "present" includes within its meaning " * * * to lay before, or submit to, a person or body for consideration or action, * * * to submit, as a petition, * * * for a decision or settlement to the proper authorities; to offer for judicial action or inquiry; * . * *."

■ We are aware that the term "present" in a few situations has been held synonymous with the term "file" but we think the manner in which it has been used in the statute and the circumstances to which it applies requires that the term "present" be distinguished from the term "file."

. These two words in their usual and ordinary sense are not generally defined as synonymous. For example, Webster's New International Dictionary, 3rd Ed., defines "present" as, among other things, "to lay (as a charge) before a court as an object of inquiry: give notice officially of (as a crime or offense): find or represent judicially (the grand-jury presented many offenses) : " whereas, to "file" is defined in the same authority: "to deliver (as a legal paper or instrument) after complying with any condition precedent (as the payment of a fee) to the proper officer for keeping on file among the records of his office: * * * to return (a law case) to the office of the clerk of a court without action on the merits." We think that when a document is marked "filed only" in a court that it is not presented to the court but is merely deposited to be kept on file until such time as someone interested in the paper formally lays before or submits to the court the said paper for consideration and action. It will be remembered that the 1958 instruments were deposited with the Probate Court and were marked "filed only" which clearly indicated that they were deposited with the court with no application for probate and with no contemplated action thereon by the court.

In the case of Carpenter v. Alton R. Co., Mo.App., 148 S.W.2d 68, 1. c. 69, the court in determining whether or not an application for a change of venue had been presented to the trial court, in referring to the case of Berlin v. Thompson, 61 Mo.App. 234, 1. c. 239, said: "That decision is authority for the proposition that when an application is filed in vacation of court, and is never called to the attention of the judge, there has been no presentation to the court." After reciting all of the facts the appellate court said: "We think these facts are sufficient to establish that the application was presented to the court so as to inform the court of the filing of an application *and to require a disposition of same.*" (148 S.W.2d 1. c. 70). (Emphasis ours.) The facts in that case demonstrate that the mere filing of the application was not enough but that in order that it be presented to the court, it had to be done on a day when the court was actually in session and that the trial judge was informed in open court when the case was called for trial that such an application had been filed, which is authority for the proposition that something more than a mere filing had to take place before it could be held that the application was presented to the court.

Further proof of this can be found in the form appended to § 473.047 RSMo 1959, V.A.M.S., Vol. 25, which is a form suggested for ("CERTIFICATE OR ORDER OF PROBATE OF LAST WILL AND TESTAMENT OF ............, DECEASED") by the Forms Committee of the Missouri Association of Probate Judges. The pertinent part of this form reads as follows:

"I, ...................., Judge Clerk of the Probate Court of the county and state aforesaid do hereby certify that on this .... day of ........, 19...., *there is presented for probate* ...... instrument .......... in writing dated ........, *and filed herein* on the ...... day of ......, 19...., purporting to be the Last Will and Testament and ........ Codicil ........ thereto of ..............., Deceased, and the Judge Clerk having examined such instrument ...... and, * * *." This suggested form clearly indicates that the

Forms Committee of the Missouri Association of Probate Judges recognized that the "filing" of an instrument purporting to be the last will and testament of a decedent is not the same as "presenting" and that these are two separate and distinct acts which may be and are often carried out on separate days.

■ Section 473.043 provides: "After the death of a testator the person having custody of his will shall deliver it to the probate court which has jurisdiction of the estate." The person having custody of the will is not required to seek the probate of the instrument. The mere fact that a will is delivered to the Probate Court does not commence the probate proceedings, Vol. 3, Maus, Probate Law and Practice, Sec. 206, p. 188. Section 474.510(4) provides that a will may be deposited in the Probate Court by testator during his lifetime and shall under certain circumstances be opened after his death and after being opened will be " * * * retained * * * until offered for probate." This statute clearly shows that the probate court takes no action or jurisdiction of the estate of the decedent until the will has been offered for probate. A will is offered for probate when one interested in the will files an application for its probate. The practice in Missouri has been to file an application for the probate of a will of a decedent.

■ In the instant case both wills should have been presented to the Probate Court and it was for that court to say whether either or both wills had been duly executed. Durell et al. v. Martin et al., 172 Tenn. 97, 110 S.W.2d 316; 95 C.J.S. Wills § 311, p. 113. Section 473.010(2) provides for the filing of an application for letters and further provides that the proceedings are deemed commenced by the filing of an application for letters. Section 473.013 provides that "The administration of the estate of a decedent from the filing of the application for letters testamentary or of administration until the decree of· final distribution and the dis-

charge of the last administrator or executor is deemed one proceeding for purposes of jurisdiction." Therefore, the jurisdiction of the Probate Court attaches when the application for letters testamentary is filed.

In many sections of the Probate Code reference is constantly made to the filing of an application for letters testamentary and again reference is frequently made to an applicant for letters testamentary. Section 473.020, subd. 1, provides that "If no application for letters is filed by a person entitled thereto under section 473.110 within twenty days after the death of decedent any interested person may apply to the court of the proper county." Subd. 2 of said § 473.020 provides that the application of such interested party shall be verified and provides for other matters that shall be recited in said application and further provides that said petition shall be set for hearing within a stipulated time and that after hearing the court may order the issuance of letters testamentary "or it may enter an order refusing letters on the estate or dismiss the petition." All of this shows the need for the filing of a petition or an application for probate of a decedent's will. Again we find that § 473.073 subd. 2, contemplates the filing of an application for letters and upon the determination of certain facts the Probate Court may grant letters or may deny the application.

It is the contention of respondents that a filing or physical delivery of a will to the Probate Court constitutes "presented" and that in the instant case the 1958 instruments were presented to the Probate Court at the time they were filed on June 29, 1960. The only authority cited by respondents in support of their contention is the case of Keys v. Keys' Estate, 217 Mo. 48, 116 S.W. 537. This case involved the question of whether a claim filed with the Probate Court satisfied the requirements. of the claim statute § 195 RSMo. 1909, which was as follows: "No claimant shall avail himself of the benefit of the preceding section unless he shall present his demand to the

court in the manner provided by law, for allowance, within two years after the granting of the first letters on the estate, * *." Respondents claim that the following language in the Keys' opinion supports their contention, (116 S.W. 1. c. 541):

"If the claim was filed in the court within the time, it can make no difference as to when the court acted thereon. Claimants cannot always regulate the actions of the courts, and all they have to do is present their claims within the statutory period of limitations. Nor does 'presentation,' as used in the statute, mean that there should be an actual presentation to the judge and a hearing thereon, but if the claim is actually lodged with the court, through the file mark of its clerk or otherwise, such is a sufficient presentation to meet the requirements of the law, although the judge of the court may not act thereon for days thereafter. The filing with the clerk is a presentation of the claim to the court."

However, respondents failed to include that part of the opinion which immediately follows the above and which is as follows:

"We concur in the language of Ellison J., in his separate concurring opinion in Savings Bank v. Burgin, 73 Mo.App., loc. cit. 116, wherein he says: 'I agree that a claim must be both exhibited to the administrator and presented to the probate court for allowance within the two years prescribed as a limitation. But I believe that when a claim has been duly exhibited to the administrator, and then, within the period of limitation, is filed in the probate court, it becomes a part of the records of such court, and is presented to the court in the sense of the statute. * * *'" (116 S.W. 1. c. 541).

From this it is seen that a mere filing of a claim in the Probate Court does not constitute presenting the demand to the court in the manner provided by law. The claim must first be exhibited to the administrator.

The Keys case did not hold that a mere filing of the claim with the clerk is a presentation of the claim to the court. The Supreme Court in the case of State ex rel. Dean et al. v. Daues et al., 321 Mo. 1126, 14 S.W.2d 990, at 1. c. 1001, explained in detail the gist of their ruling and holding in the Keys case when they said:

"The gist of our rulings and holdings in the Rassieur and Keys Cases [Rassieur v. Zimmer, 249 Mo. 175, 155 S.W. 24, Keys v. Keys' Estate, 217 Mo. 48, 116 S.W. 537], supra, therefore, was that a claimant's demand is deemed to be presented, or filed, in the probate court, for allowance, if, and when, the *proper* (i. e., the *statutory*) notice is served upon the administrator of decedent's estate, or such service of the statutory written notice is waived by the administrator, before the running and bar of the special statute of limitation. It seems to be clear, from what was said in the Rassieur and Keys cases, supra, in construing section 195, R.S. 1909, before its amendment in 1911, that this court deemed and considered it to be a necessary and prerequisite procedural step, leading to the presentation, or filing of a claimant's demand for allowance in the probate court, *and in order to give, or confer upon, that court jurisdiction of the claimant's demand, and the power to act thereon* (this emphasis ours), that the claimant must serve upon, or deliver to, the administrator or executor of the decedent's estate the statutory written notice in the form, manner and time as required and prescribed by sections 203 and 204, R.S.1909 (now sections 194 and 195, R.S.1919) * * *."

This clearly shows that in order for there to be a presentation of the claim to the Probate Court at the time the Keys case was ruled, in addition to filing claimant's demand in the Probate Court, there had to be a proper notice served upon the administrator of the decedent's estate or a waiver of service of such notice. As said

in the Daues case, supra, the notice required "is intended and designed to perform a double purpose and office: (1) It serves as an *exhibition* (to the administrator or executor of an estate) of a claimant's demand for the purpose of the *allowance* of such demand; and (2) it performs the office of an ordinary summons, by virtue of which, when properly served, the probate court acquires jurisdiction over the person of the administrator or executor in the judicial proceeding for the allowance of the demand." (14 S.W.2d l. c. 998) Service of the prescribed notice in the form required and filing of the claim in the Probate Court constitutes presenting the claim which initiates or commences the proceeding when both steps are followed and taken by claimant. This case is no authority for a holding that the mere filing with the clerk constitutes "presented."

We rule that a will has not been presented to the judge or clerk of the Probate Court within the meaning of § 473.050 when it is merely "filed" and not accompanied with a petition or application for its probate.

Therefore, in the instant case the 1958 instruments were not presented to the Probate Court within the meaning of § 473.050 until the "Application for Rejection of Will" was filed on February 26, 1962. This was approximately nineteen and one-half months after the date of the first publication of notice of the granting of letters testamentary which took place on July 9, 1960. Section 473.050 specifically limits the time within which the Probate Court may take proof of a will. Unless the will has been presented to the Judge or Clerk of the Probate Court within nine months from the date of the first publication of the notice of granting letters testamentary, said Judge or Clerk has no power or authority to take any proof of said will or to issue any certificate of probate or rejection.

The case of State ex rel. Bier v. Bigger, 352 Mo. 502, 178 S.W.2d 347, was an original proceeding in the Supreme Court for a writ of mandamus to compel respondent, judge of the probate court, to take jurisdiction of the probate of an alleged last will of a decedent and "to render a decision admitting or rejecting said alleged will to probate." (178 S.W.2d l. c. 348) Relator in his petition for mandamus alleged, among other things, "That the probate court held that because the application for probate was made more than one year after notice of letters, under the provisions of Section 532, Revised Statutes Missouri 1939, Mo. R.S.A. § 532, vol. 1, p. 925, the court was without jurisdiction to take proof of the alleged will, or to issue a certificate of probate or rejection, and dismissed the application." (178 S.W.2d l. c. 348).

Section 473.050 is the successor statute to that portion of § 532 RSMo 1939, referred to above. The only practical difference between the two statutes being the period within which the will must be presented.

Relator's petition in the above case alleged that "the undertaker who conducted the burial of Smith, had fraudulently concealed the will, had himself appointed administrator and had embezzled a large portion of the estate." (178 S.W.2d l. c. 348). The Supreme Court in dismissing relator's petition said "This court has uniformly held that where a statute of limitations is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself." (178 S.W.2d l. c. 350). It further held that said section "is a special statute limiting the time for probating wills and it does not expressly or impliedly authorize the time to be extended for any reason." (178 S.W.2d l. c. 351.) Adding, that "[t]he purpose of such statutes is expressed in one of the earliest of them, 21 James I, chap. 16, 'For the quieting of men's estates and the avoiding of suits.' In particular cases, this inflexible limitation may seem harsh. If so, the remedy is legislative, not judicial."

In the Biers case the Supreme Court relied on Wyers v. Arnold, 347 Mo. 413, 147 S.W.2d 644, l. c. 648, wherein it said: "We conclude that our statute (the predecessor of § 473.047 and § 473.050 RSMo 1959, V.A. M.S.) limiting the time for the probate of a will, a reasonable rule which does not discriminate between residents and non-residents, does not conflict with the Treaty with Germany. It does not unlawfully limit or restrict the freedom of disposal by testament. Consequently, it is not superseded by the treaty.

"The statute is mandatory on respondent and in proceeding contrary to its express prohibition he acted without authority and in excess of his jurisdiction." The question for decision in the Wyers' case was whether a treaty between the United States and Germany which seemed to have no limitation period was to be construed as superseding the statute of this state (now § 473.050) which limits the time within which a will may be admitted to probate.

Section 473.050 prescribes a jurisdictional limitation and the Probate Court, Judge or Clerk thereof had no jurisdiction under the circumstances present in the instant case to take proof of the 1958 will and codicil presented after the nine month jurisdictional limitation. Having no jurisdiction to take proof of the will after the nine month jurisdictional limitation, logically, the Probate Court can neither admit to probate nor reject the will and codicil offered after the nine month period has elapsed. Any attempt to take proof or reject the will after the nine month jurisdictional limitation is beyond the jurisdiction of the Probate Court and any orders made by the Probate Court in such attempt are void and should be quashed.

We are aware that § 473.050 does not expressly bar a certificate of rejection, but it is obvious that if proof of a will cannot be taken that no order concerning the probate or rejection of said will can be made. Obviously, under the statute rejection can only be made when the court fails to find one or more of the facts enumerated in § 473.073.

It is clear that where the court cannot take proof of a will, it can neither admit to probate nor reject from probate the said will. It is likewise clear that a will neither probated nor rejected cannot be injected into a will contest in order to ascertain whether or not it is the last will and testament of the deceased since the Circuit Court in a will contest may not admit a will to probate unless it is first probated or rejected in the Probate Court, § 473.083(2); Breeding v. Pack, Mo., 164 S.W.2d 929; Ebling v. Hardesty, Mo.App., 354 S.W.2d 348.

We rule that the orders of the St. Louis County Probate Court rejecting from probate the instruments dated May 26, 1958, and June 19, 1958, are void for want of the court's jurisdiction to take any action regarding said instruments. Therefore, it is ordered that the proceedings and judgment of the Probate Court wherein it took proof of the 1958 instruments purporting to be the last will and testament of the decedent and entered its order rejecting from probate said purported will dated May 26, 1958, of Carrie Skuy, deceased, and purported codicil thereto dated June 19, 1958, be quashed and said proceedings and judgment be held for naught.

In view of our holding and order the judgment of the Circuit Court is reversed and cause remanded with directions to the Circuit Court to order the record of the Probate Court, questioned in this proceeding, quashed pursuant to the views expressed herein.

WOLFE and ANDERSON, JJ., concur.